UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
ROBERT PACY,                                              )
)
      Plaintiff,                                           )
)
v.                                                                )     Civil No. 15-11894-LTS
)
CAROLYN W. COLVIN,                                )
)
      Defendant.                                        )
_____)

MEMORANDUM AND ORDER ON MOTION TO
REMAND TO AGENCY (DOC. NO. 15) AND MOTION FOR
ORDER AFFIRMING DECISION OF THE COMMISSIONER (DOC. NO. 17)

May 3, 2016

SOROKIN, J.

      Robert Pacy ("Pacy") brings this action against Carolyn W. Colvin, Acting

Commissioner of the Social Security Administration ("The Commissioner"), asking this Court to

either reverse or remand the Commissioner's final decision denying Pacy Supplemental Security

Income ("SSI") benefits.  Doc. No. 15.  The Commissioner moves to affirm that decision.  Doc.

No. 17.  Pacy filed a response to the Commissioner's motion.  Doc. No. 21.  After careful

consideration of the parties' briefs and arguments, Pacy's motion is DENIED and the

Commissioner's motion is ALLOWED.

I.      BACKGROUND

      A.     Facts

            1. Initial Onset

Pacy was fifty-one years old on the date of the alleged onset of disability. Tr. at 180.[1]

He has completed the eleventh grade of school, id. at 199, and has no relevant vocational history.

Id. at 21. He has been in and out of hospitals with symptoms stemming from his alcohol

consumption and dependency. Id. at 251, 289. At the onset of his alleged disability, Pacy drank

one-and-a-half pints of whisky daily. Id. at 254.

        2.      Medical Evidence

             a.      Dr. Morin's Consultative Examination and Findings

After his initial hospital visit and physical consultative examination, Disability

Determination Services referred Pacy to Dr. Gregory Morin ("Dr. Morin"), who conducted a

psychological consultative evaluation on July 7, 2012. See id. at 305–11. Dr. Morin noted that

although Pacy was anxious and occasionally fidgety, it did not affect his concentration on

testing. Id. at 305. He had good access to his long-term memory. Id. Pacy attributed his

reading problems due to visual tracking difficulty, not intellectual disability. Id. at 306. He also

had memory problems due to seizures, which happened infrequently. See id. at 305–06.

On the Bender Gestalt test, which tests for "organic impairment," Pacy made only one

minor error; "normal" adults are expected to make none. Id. at 307. Pacy made no error on the

Trail Making Part A test, and completed the test efficiently enough to receive a score in the

"Normal Range." Id. Pacy likewise made no errors on Part B of that test, but he finished more

slowly, earning him a score in the "Mildly Impaired Range." Id. He maintained reasonable

focus and attention during the Trail Making Test. Id.

---

[1] Citations to "Tr." Refer to the Transcript of the Administrative Record, available at Docket
Number 13. Citations preserve the transcript's original pagination.

Pacy also received the Wechsler Memory Scale-III test, which consists of a set of subtests measuring various subtypes of memory across different channels.  Id. His scores follow:

**Wechsler Memory Scale-III**

| Memory Subtype | Score | %-ile |
|---|---|---|
| Auditory Immediate Memory | 62 | 1 |
| Visual Immediate Memory | 57 | .2 |
| Immediate Memory | 51 | .1 |
| Auditory Delayed Memory | 71 | 3 |
| Visual Delayed | 75 | 5 |
| Auditory Recognition Delayed | 85 | 16 |

General Memory Composite Score: 72 (3rd %-ile)
Working Memory Composite Score:  81(10th %-lie)

Id.  Based on these scores, Dr. Morin concluded that Pacy's estimated intellectual functioning was in the low average to borderline range, and he might have difficulty working with multi-step procedures.  Id. at 309.  He further noted that Pacy displayed no gross motor anomalies and spoke at a normal rate and volume, and his thinking appeared concrete and reality oriented with no evidence of disorder.  Id. at 310.  Dr. Morin summarized his findings as follows:

> In sum, Mr. Pacy's scores on the WMS-III are generally consistent with an assumption of borderline to low average range intellectual function inferred from his educational and work histories. There are some exceptions. His auditory immediate memory capabilities are generally extremely low while his delayed recall of logical information in narrative form improves to the low average range over a minute long delay. His recall after a delay of bit-by-bit list-type information does not improve. Mr. Pacy was able to use cues or prompts to significantly improve his delayed recall of both types of auditory information. His visual immediate memory capabilities are generally extremely low, but his recall/recognition of discrete information improves significantly over a period of delay. His delayed recall of more complex visual information embedded

in pictures of complex social scenes does not improve and remains an area of particular weakness. Mr. Pacy's working memory in both visual and auditory areas is low average and should be sufficient for many educational or work requirements. A multi-sensory teaching approach would be helpful.

Id. at 309.

        b.     Dr. Langer's non-examining evaluations and findings

Dr. Langer evaluated Pacy's mental functioning in August 2012, and concluded that he had adequate memory and understanding for simple 1–2 step tasks, and adequate sustained concentration, persistence, and pace for at least simple 1–2 step tasks. Id. at 90–91.

    B.    Procedural Posture

Pacy, claiming an inability to work since April 17, 2011, filed his application for SSI on June 1, 2011. Id. at 180–88. After the initial denial of his application on November 3, 2011, a hearing was held before an Administrative Law Judge ("ALJ") on Feb 14, 2014. Id. at 29–71. Two weeks later, on February 28, 2014, the ALJ found him not disabled. Id. at 10–24. Since the Appeals Council denied Pacy's request for review on March 26, 2015, id. at 1–7, the ALJ's decision stands as the final decision of the Commissioner. Since Pacy has exhausted his administrative remedies, this case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ first found that Pacy had not engaged in any substantial gainful activity since his application date. Tr. at 15. Second, the ALJ found that Pacy had the following severe impairments: chronic liver disease with cirrhosis, adjustment disorder with anxious and depressed mood, active alcohol abuse and dependence with seizure episodes, occasional cannabis use, and cocaine abuse in sustained remission. Id. Third, the ALJ found that Pacy's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1, 20 CFR §§ 416.920(d), 416.295 and 416.926. See Tr. at 16. The ALJ also

found that Pacy had the Residual Functional Capacity ("RFC") to perform light work as defined by 20 C.F.R § 416.967(b), subject to certain limitations.  Tr. at 17.[2]

      Fourth, the ALJ found that Pacy did not have any past relevant work.  Id. at 21.  The ALJ noted that Pacy: was fifty-one years old at the onset of disability, which makes him "closely approaching advanced age" under 20 C.F.R. § 416.964; had limited education; can communicate in English; and does not have any transferrable skills since he has no work experience.  Id. at 22.  Fifth, the ALJ found, based on testimony of the vocational expert ("VE"), that Pacy could perform work that existed in significant numbers in the national economy.  Id.

## II.    LEGAL STANDARD

      The Commissioner's decision must stand if grounded in substantial evidence.  See 42 U.S.C. § 405(g).  "More than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)), substantial evidence must adequately support a given conclusion in a reasonable mind.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  Since "substantial evidence" means something less than a preponderance, see Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003), a court will affirm the Commissioner's decision "even if the record

---

[2] The ALJ found the following limiting conditions:

> [H]e could lift and carry 20 pounds occasionally and 10 pounds frequently, and could sit, stand or walk for 6 hours out of an 8 hour workday.  He could frequently climb ramps or stairs, but never ropes, ladders, or scaffolds, and could frequently balance and occasionally stoop.  He must avoid concentrated exposure to hazardous machinery and unprotected heights, and he could not perform any jobs that required driving automotive and unprotected heights, and he could not perform any jobs that required driving automotive vehicles.  He would be limited to and could sustain concentration and attention on simple 1–2 step tasks for 2 hours at a time over an 8 hour workday and a 40 hour work week, or an equivalent work schedule.

Tr. at 17.

can arguably justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The task of resolving evidentiary conflicts and weighing credibility belongs to the Commissioner and her designee, the ALJ. See Rodriguez, 647 F.2d at 222. Legal errors made while evaluating a particular claim will this Court from affirming a denial of benefits. See Manso–Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).

III.   DISCUSSION

Before proceeding seriatim through Pacy's claims of error, the Court begins with an overview of the guiding legal framework, including the relevant statutory and regulatory provisions. Pacy bears the burden of proving his disability within the meaning of the Social Security Act ("The Act"). See Deblois v. Secretary of Health and Human Servs., 686 F.2d 76, 79 (1st Cir. 1982). Under that Act, a claimant seeking benefits must prove an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Only those afflicted with disabilities "of such severity" as to render a claimant "not only unable to do his previous work but [also], considering his age, education, and work experience, [unable to] engage in any other kind of substantial gainful work which exists in the national economy," may receive benefits. 42 U.S.C. § 423(d)(2)(A).

To determine disability, the Social Security Administration has promulgated a five-step sequential analysis. See 20 C.F.R. § 404.1520. The hearing officer (here, the ALJ) must determine: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant suffers from a severe impairment; 3) whether claimant's impairment meets

or medically equals a listed impairment; 4) whether claimant's impairment precludes his or her performance of any past relevant work; and 5) whether claimant's impairment prevents his or her performance of other jobs existing in significant numbers in the national economy. See id. The findings discussed in the above summary of the ALJ's decision correspond to the five steps of this analysis. Having provided the background legal framework, the Court now turns to Pacy's two asserted claims of error.

A.     Inconsistency between the VE's Testimony and the ALJ's Hypothetical Question

Pacy first argues that the jobs the VE identified Pacy as capable of performing did not match the limitations the ALJ imposed in the hypothetical question he asked the VE which elicited those jobs. Doc. No. 15 at 6-8. Pacy argues that the three jobs the VE proffered are rated in the Dictionary of Occupational Titles ("DOT") at Reasoning Level 2 ("R2"). Id. at 6-7. R2 jobs require one to "carry out detailed but uninvolved written or oral instructions." Id. at 7 (citing DOT Appendix C: Components of the Definition Trailer, GED).

Next, Pacy argues that his RFC limits him to simple 1–2 step tasks, which more neatly corresponds to Reasoning Level 1 (R1) jobs, requiring only "commonsense understanding to carry out simple one- or two-step instructions." Id. (citing DOT Appendix C: Components of the Definition Trailer, GED). And finally, because Pacy's RFC precludes his performance of the jobs proffered by the VE, those jobs cannot serve as the substantial evidence necessary to sustain the ALJ's step-five determination.

This argument fails. Pacy essentially points to an apparent conflict between the VE testimony and the DOT entry, and argues that the DOT listing should trump. This is not the case. As the SSA has recognized, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the

explanation given by the VE . . . is reasonable and provides a basis for relying on the

VE . . .  testimony rather than on the DOT information."  SSR 00-4P, 2000 WL 1898704, at *2

(S.S.A. Dec. 4, 2000).

Further, there exists no conflict between the DOT listing and the VE testimony.  The VE

testified that Pacy, given his RFC, including the limitation that Pacy could follow only "simple,

one- and two- step tasks," could perform the three jobs.  Tr. at 62.  When Pacy's counsel probed

the VE about the apparent discrepancy between her testimony and the DOT listings, she

explained that the DOT classifies jobs based on the <u>maximum</u> reasoning level possible rather

than the average reasoning level or the minimum reasoning level.  <u>See id.</u> at 66. In other words,

the DOT classification serves as a reasoning level ceiling, and not as a floor.  <u>Id.</u>  And the Social

Security Administration ("SSA") has itself confirmed this understanding via an interpretive rule.

<u>See</u> SSR 00-4P, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000) ("The DOT lists maximum

requirements of occupations as generally performed, not the range of requirements of a particular

job as it is performed in specific settings. A VE, VS, or other reliable source of occupational

information may be able to provide more specific information about jobs or occupations than the

DOT.").

Given the VE's testimony and, especially, the SSA's interpretive rule, <u>see</u> <u>Massachusetts</u>

<u>v. Sebelius</u>, 638 F.3d 24, 30 (1st Cir. 2011) ("When an agency interprets its own ambiguous

regulations, its interpretation is controlling unless it is plainly erroneous or inconsistent with the

regulation.") (internal quotations and citations omitted), Pacy's RFC does not preclude his

performance of the R2 level jobs proffered by the VE.  Therefore, the VE's opinion qualifies as

substantial evidence to support the ALJ's step-five determination.  <u>See</u> <u>Sousa v. Astrue</u>, 783 F.

Supp. 2d 226, 235 (D. Mass. 2011) ("The opinion of a vocational expert that a Social Security

claimant can perform certain jobs qualifies as substantial evidence at the fifth step of the analysis."). And given the ALJ's specific finding that "considering [Pacy's] age, education, work experience, and residual capacity, [he was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy," Tr. at 23; see also id. at 22-23 (discussing the VE's testimony and the ALJ's incorporation of this testimony into his analysis),[3] the Court refuses to disturb the ALJ's decision on this ground.

      B.    <u>ALJ's Failure to Consider Whether a Borderline Issue Existed</u>

Pacy next contends that the ALJ failed to consider whether Pacy's situation constituted a "borderline" issue. Because SSI benefits scale with age, older claimants encounter lower barriers to obtaining a "disabled" designation and the benefits that follow. See 20 C.F.R. § 404, Subpt. P, App. 2. The SSA, striving to avoid rigid categorization, "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). If a claimant stands "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled," the ALJ must "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Id.

Here, the ALJ mentioned Pacy's age only to note that he was fifty-one years old when he filed his application for SSI benefits. Tr. at 22. That is not the relevant age. "[F]or purposes of Social Security regulations, age is determined as of the date of the decision, rather than as of the

---

[3] The ALJ specifically noted that the local Massachusetts economy contains 2600 small product packer and sorter jobs, 7300 production inspector jobs, and 14,000 bench assembler jobs, and that the national economy contains 330,000, 430,000, and 900,000 of these jobs, respectively. Tr. at 23. Further, the VE testified that these jobs require individuals who "know and recognize letters and numbers at a 2nd or 3rd grade level, but [do] not require narrative reading, interpreting language, or drawing conclusions," id., and that, given the limitations the ALJ stipulated, see id. at 22-23, Pacy could perform those specific jobs. See id. at 23.

date of the application." <u>Justice v. Astrue</u>, 576 F. Supp. 2d 195, 203 (D. Mass 2008) (citing

<u>Barrett v. Apfel</u>, 40 F. Supp. 2d 31, 38 (D. Mass. 1999)). Pacy, born on November 15, 1959,

was thus fifty-four years old at the time of the ALJ's February 28, 2014 decision. He therefore

stood less than nine months away from his fifty-fifth birthday and a subsequent "advanced age"

designation. That designation would have shifted his classification from Grid Rule 202.10 to

202.01, likely entitling him to benefits. <u>See</u> 20 C.F.R. § 404, Subpt. P, App. 2.

      "The First Circuit has not weighed in on . . . the extent to which an ALJ must address the

borderline-age issue in a decision or at a hearing." <u>Gallagher v. Astrue</u>, No. 08-CV-163-PB,

2009 WL 929923, at *6 (D. N.H. 2009). Yet, in a case in which the claimant was four months

away from the next age category, Judge Young noted the "extensive precedent requiring

[administrative law judges] to discuss whether a potential borderline case falls within that

category." <u>Justice v. Astrue</u>, 589 F.Supp.2d 110, 111 (D. Mass. 2008) (quoting <u>Bowie v.</u>

<u>Comm'r of Soc. Sec.</u>, 539 F.3d 395, 399 (6th Cir. 2008) (Moore, J., dissenting)). In close, or

even arguably close scenarios, this requirement is necessary for a district court to adequately and

meaningfully review the ALJ's decision. <u>See id</u>.

      But that is not the case here. Pacy was slightly under nine months away from the next

age category, which is more than "a few months" under any reasonable interpretation of the

term. For example, Webster's dictionary defines few as "a small number of units or

individuals." <u>Merriam-Webster's Collegiate Dictionary</u> 464 (11th ed. 2012). And case law

backs this up. <u>See Furtado v. Astrue</u>, 2008 WL 2950782, at *10 (D. R.I. 2008) (quoting <u>Pickard</u>

<u>v. Comm. of Soc. Sec.</u>, 224 F. Supp. 2d 1161, 1168–69 (W.D. Tenn. 2002) ("[T]he general

consensus is that 'the borderline range falls somewhere around six months from the older age

category.'"). As another session of this Court observed in rejecting a similar challenge from

someone slightly more than nine months younger than fifty-five, "there is little wonder why [he] did not raise the age issue" before the ALJ, as his case was "simply not a borderline situation." Barrett, 40 F. Supp.2d 31, 39 (D. Mass. 1999).  The ALJ here likewise committed no error by failing to consider a potential borderline age situation.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, Pacy's Motion to Reverse or Remand, Doc. No. 15, is DENIED, and the Commissioner's Motion for Order Affirming the Decision of the Commissioner, Doc. No. 17, is ALLOWED.


SO ORDERED.


  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge